STATE of Indiana, Indiana State Police, Appellants (Respondents),

v.

Timothy X. WILLITS, et al., Appellees (Petitioners).

No. 30S05–0010–CR–569.

Supreme Court of Indiana.

Aug. 20, 2002.

Karen M. Freeman–Wilson, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellants.

Gregg H. Morelock, D.J. Davis, Cohen & Morelock, Greenfield, IN, Attorneys for Appellees.

## ON PETITION TO TRANSFER

RUCKER, Justice.

After a criminal prosecution ended in a conviction, third parties intervened to obtain the return of property that had been earlier seized by the State Police. In addition to an order to return the property, the trial court also awarded damages. The Court of Appeals affirmed. We grant transfer and hold that the statute authorizing the return of property does not also authorize the award of money damages. The judgment of the trial court is therefore reversed.

### Background and Procedural History

When the Indiana State Police received information that Timothy Willits was selling drugs and buying stolen merchandise out of a family-run business, they decided to conduct a "sting" operation. Officers purchased several bait and tackle supplies from a Wal–Mart store and marked them with either an ultraviolet solution or a special bar code. The marked items were provided to an informant. In exchange for drugs or money, the informant passed the items along to Timothy Willits at the Willits Bait and Tackle Shop in Greenfield.

On September 17, 1997, armed with a list of specially marked items, State Troopers obtained a warrant to search the Bait and Tackle Shop. Executing the warrant, officers seized over 96,000 inventory items consisting primarily of sport-fishing lures and related camping equipment. The day after the warrant was executed, Timothy Willits was arrested and charged in Hancock Superior Court No. 1, the Honorable Richard Payne presiding. Although the record is not clear of the relationship between Timothy Willits and the husband and wife team of Robert and Judy Willits (referred to collectively as "the Willitses"), the record is clear that husband and wife owned the Bait and Tackle Shop and much of the seized inventory. Thus, about a week after the search, the Willitses filed a "Motion to Recover Property" in Hancock Superior Court No. 2, the Honorable Richard Culver presiding. R. at 8, 16. The motion sought return of all items taken during the search.

After conducting a hearing, the trial court found that many of the seized items were not listed in the probable cause affidavit and thus were beyond the scope of the warrant. R. at 65. As a result, the trial court ordered the Indiana State Police and the State of Indiana (referred to collectively as "the State") to return those items to the Willitses.[1] The State com-

---

1. The record shows that the trial judge before whom the motion was filed was the same judge who had originally issued the search warrant. There is no question the judge possessed jurisdiction to issue the search warrant and to order all seized property impounded by the State Police. However, once criminal charges were filed in Hancock Superior Court

plied, at least in part. The record shows that on November 19, 1997, a State Trooper appeared at the Willits Bait and Tackle Shop with several boxes of fishing lures and other fishing equipment. However, some of the items were damaged and unsuitable for sale, and several items were missing that had been ordered returned.

On December 1, 1998, the Willitses filed a petition to intervene in Timothy's criminal case before Judge Payne and filed another Motion to Recover Property. Timothy joined the motion. By that time, he had pleaded guilty to drug-related charges and had been sentenced accordingly. The trial court granted the petition to intervene and scheduled the Motion to Recover Property for hearing on January 25, 1999.

The Willitses served a summons, a copy of the motion, and a notice of the hearing date on both the Indiana State Police and the State of Indiana by certified mail return receipt requested. However, on the scheduled hearing date, no one appeared on the State's behalf. Upon motion by the Willitses, the trial court entered default judgment against the State and proceeded to hear evidence that included the condition of the returned property and the wholesale value of the property that was either damaged or not returned. The trial court then awarded damages to the Willitses in the amount of $31,084.28. The trial court also directed the State to return to the Willitses by a date certain property belonging to Timothy. Failing to do so, declared the trial court, would result in a further award of damages in the amount of $3,904.14. In addition, the trial court

warned that if any of the property was returned in a damaged condition unsuitable for sale, then another hearing would be conducted to determine the amount of the loss.

Thereafter, the State filed a motion for relief from judgment. After a hearing, the trial court denied the motion. On review, a divided panel of the Court Appeals affirmed the trial court's judgment. *See State v. Willits*, 733 N.E.2d 496 (Ind.Ct. App.2000). Having previously granted transfer, we now reverse the trial court.

### Discussion

■ Under Indiana Trial Rule 60(B), the court may relieve a party from a default judgment for a variety of reasons including "mistake, surprise, or excusable neglect," Ind. Trial Rule 60(B)(1); "the judgment is void," T.R. 60(B)(6); or "any reason justifying relief from the operation of the judgment, other than those reasons" explicitly stated, T.R. 60(B)(8). The grant or denial of a Trial Rule 60(B) motion for relief from judgment is left to the sound discretion of the trial court. *Wolvos v. Meyer*, 668 N.E.2d 671, 678 (Ind.1996). On review, we will reverse only if the trial court abused its discretion. *LaPalme v. Romero*, 621 N.E.2d 1102, 1104 (Ind.1993). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind. 1993).

■ Arguing the trial court lacked jurisdiction to award money damages in

---

No. 1, the judge in Hancock Superior Court No. 2 lost all jurisdiction and authority over the case and thus should not have entered an order for the return of property. *See State ex rel. Coleman v. Hendricks Superior Court II*, 272 Ind. 40, 396 N.E.2d 111, 112 (1979) (granting writ of mandate and prohibition

holding void an order of the Hendricks Superior Court to return seized items where order was issued after jurisdiction over the case had vested in the Hendricks Circuit Court). However, neither party raises this jurisdictional claim on appeal.

this case, the State implicitly invokes the void judgment provision of Trial Rule 60(B)(6). Jurisdiction is comprised of three elements: (1) jurisdiction of the subject matter; (2) jurisdiction of the person; and (3) jurisdiction of the particular case. *Troxel v. Troxel*, 737 N.E.2d 745, 749 (Ind. 2000). Only jurisdiction of the particular case is implicated here.[2] "Jurisdiction of the particular case refers to the right, authority, and power to hear and determine a *specific case* within the class of cases over which a court has subject matter jurisdiction." *Adler v. Adler*, 713 N.E.2d 348, 352 (Ind.Ct.App.1999) (quoting *City of Marion v. Antrobus*, 448 N.E.2d 325, 329 (Ind.Ct.App.1983) (emphasis in the original)). A judgment rendered by a court without jurisdiction to hear a particular case is voidable. *Troxel*, 737 N.E.2d at 750. Because the State timely objected to the trial court's jurisdiction, the jurisdictional defect, if any, has not been waived. *See id.*

■ Indiana Code section 35–33–5–5 governs the disposition of property seized as a result of a search or an arrest. The statute provides in relevant part:

> (b) Evidence that consists of property obtained unlawfully from its owner may be returned by the law enforcement agency to the owner before trial, in accordance with IC 35–43–4–4(h).[3]

> (c) Following the final disposition of the cause at trial level or any other final disposition the following shall be done:

> (1) Property which may be lawfully possessed shall be returned to its rightful owner, if known. If ownership is unknown, a reasonable attempt shall be made by the law enforcement agency holding the property to ascertain ownership of the property.

Ind.Code § 35–33–5–5(b), (c)(1). There is no question that this statute applies to the return of property to its lawful owner. *See Moore v. State*, 504 N.E.2d 586, 587 (Ind.Ct.App.1987) (noting that where there is no dispute about the ownership or right of possession of the property, the police agency holding the property could return it to its owner without the necessity of a prior evidentiary hearing). The question is whether the statute applies also to an award of money damages incidental to the property's retention. We conclude that it does not apply.

---

2. The State also contends the trial court lacked jurisdiction over the person because the Willitses did not provide notice as required by Trial Rule 55(B). *See* T.R. 55(B) (requiring "[i]f the party against whom judgment by default is sought has appeared in the action, he ... shall be served with written notice of the application for judgment at least three [3] days prior to the hearing on such application."). Because we conclude the trial court erred in awarding money damages, we do not reach the question of personal jurisdiction.

3. Indiana Code section 35–43–4–4(h) provides:

A law enforcement agency that is holding as evidence property over which a person is alleged to have exerted unauthorized control or to have otherwise obtained unlawfully, may return that property to its owner if: (1) the property has been photographed in a manner that will serve the purpose of demonstrating the nature of the property, and if these photographs are filed with or retained by the law enforcement agency in place of the property; (2) receipt for the property is obtained from the owner upon delivery by the law enforcement agency; (3) the prosecuting attorney who is prosecuting a case that involves the property has not requested the law enforcement agency to decline requests for return of the property to its owner; and (4) the property may be lawfully possessed by the owner.

The statute "sustains the trial court's continuing jurisdiction over property seized in the course of a criminal investigation." *Conn v. State*, 496 N.E.2d 604, 609 (Ind.Ct.App.1986). It also codifies the common law rule that requires the return of such property to the rightful owner unless the property has been destroyed because possession would be unlawful. *Hicks v. State*, 635 N.E.2d 1151, 1153 (Ind. Ct.App.1994); *Conn*, 496 N.E.2d at 609. Under the common law, a legal proceeding for the return of property was referred to as an action in replevin. *See* Black's Law Dictionary 1299 (6th ed.1990) (defining replevin as "[a]n action whereby the owner or person entitled to repossession of goods or chattels may recover those goods or chattels from one who has wrongfully distrained or taken or who wrongfully detains such good or chattels."); *see also Ridgeway v. West*, 60 Ind. 371, 372–73 (1878) (noting that plaintiff maintained an action in replevin to recover items seized by a warrant). Importantly for our analysis here, under the common law, an action in replevin contemplated the return of goods only and did not include a monetary award for incidental damages.[4] *See Doughty v. Sullivan*, 661 A.2d 1112, 1118 (Me.1995) ("Historically, replevin lay to recover immediate possession of a specific chattel as compared with other common law actions for trespass or conversion which lay to recover damages for the wrongful taking of a chattel.") (citing Joseph E. Cobbey, A Practical Treatise on the Law of Replevin § 17 (2d ed. 1900) ("In replevin there was no claim for damages as such, but only for the immediate possession of the property.")); *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 356 S.E.2d 877, 879 (1987)

("At common law, trover was an action for damages for conversion of personalty; [while] replevin was an action to recover specific chattels unlawfully taken and wrongfully withheld."); *Sinnott v. Feiock*, 165 N.Y. 444, 59 N.E. 265, 265 (1901) (noting that at common law, replevin was "essentially [an action] to recover the possession of chattels, as distinguished from actions in trespass or trover to recover damages for the seizure or for the value of the property.").

Under the rules of statutory construction we "presume that the legislature did not intend to make any change in the common law beyond those declared either in express terms or by unmistakable implication." *South Bend Cmty. Sch. Corp. v. Widawski*, 622 N.E.2d 160, 162 (Ind.1993). Because the common law did not contemplate money damage awards in actions for replevin, we do not believe the legislature intended to change that rule when it enacted Indiana Code section 35–33–5–5.

We are bolstered in this belief for two additional reasons as well. First, the statute does not expressly provide for an award of money damages incident to the property's retention. " 'When certain items or words are specified or enumerated in a statute then, by implication, other items or words not so specified or enumerated are excluded.' " *Forte v. Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 800 (Ind. 2001) (quoting *Health & Hosp. Corp. of Marion County v. Marion County*, 470 N.E.2d 1348, 1355 (Ind.Ct.App.1984)). This is so under an ancient doctrine of statutory construction: *expressio unius est exclusio alterius*. *See* 2A Norman J. Singer, Statutes and Statutory Construc-

---

4. *Compare* I.C. § 34–21–10–1 (codifying the common law of replevin and allowing an award of monetary damages); *State Exch. Bank of Culver v. Teague*, 495 N.E.2d 262, 266 (Ind.Ct.App.1986) (commenting on the statu-

tory provision and explaining that "[a] replevin action is a speedy statutory remedy designed to allow one to recover possession of property wrongfully held or detained as well as any damages incidental to the detention.").

**814**

tion § 47:23 (6th ed. 2000). Here, the statute provides for the return of property only. By implication, an award of money damages is excluded.

 Second, the Tort Claims Act was enacted by the Indiana General Assembly in order to establish procedures for cases involving the prosecution of tort claims against governmental entities. *Indiana Dep't of Transp. v. Shelly & Sands, Inc.,* 756 N.E.2d 1063, 1076 (Ind.Ct.App.2001). The Act is comprehensive, and unless the activity giving rise to the tort falls within certain enumerated exceptions, governmental entities and their employees are subject to liability for torts they commit. *See* I.C. § 34–13–3–3. This includes claims for "damage to property." I.C. § 34–6–2–75. It is the Act which the Willitses must avail themselves to pursue a monetary award for any damages to their inventory.[5] We conclude therefore that the portion of the trial court's judgment awarding damages to the Willitses for the value of their unreturned property is void having no force and effect. As such, the trial court erred in denying the State's Trial Rule 60(B)(6) motion for relief from judgment.

### Conclusion

The judgment of the trial court is reversed. This cause is remanded for further proceedings.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.

---

5. The Willitses apparently anticipated that the Tort Claims Act was the appropriate remedy to pursue their claim against the State. The record shows that on September 24, 1997, pursuant to Indiana Code section 34–4–16.5, the Willitses sent notice to the State Police Superintendent, the Risk Management Commission, and the Attorney General of Indiana. *See* Appendix A to Appellees' Br. in Opposition of Petition for Transfer.